### HUNTINGTON ET AL. V. CARPENTER.

THIS was an action of disseisin, brought by the inhabitants of the town of Norwich, against the defendant, lessee of the first ecclesiastical society in said town. On special pleadings, the case was thus stated for the decision of court:

The town of Norwich, before the year 1695, constituted but one parish or ecclesiastical society; and the inhabitants transacted their town and parochial business at the same meetings. In June, 1765, they appointed a committee to purchase lands for the use and accommodation of a gospel minister amongst them: The committee purchased of Stephen Gifford the lands in question, and took a deed of bargain and sale, expressed to be, " to the inhabitants of the town of Norwich, their heirs, successors and assigns." In December, 1697, the inhabitants of the town, by a vote, levied a tax on themselves, for the purposes of discharging the minister's salary, paying for the land purchased of Gifford, and defraying other parish charges.

The lands in question were immediately applied to the use for which they were purchased, and have ever since been applied to the use of the ministry in the first society in Norwich. The inhabitants of the town, by vote, in December, 1701, sequestered for the use of the ministry, other lands adjoining the lands in question, and gave the whole the name of " the parsonage lot." In 1716, by act of assembly, two other ecclesiastical societies were incorporated from the town of Norwich, called the East Farms and the West Farms; after which (to-wit), in July, 1717, Mr. Benjamin Lord was settled in the ministry in the old or first society in said

town; and in August, 1717, the said society, by vote, granted to him the lands in question, for the term of his ministry; which he held until the time of his death, which happened in April, 1784.

The proprietors of the township of Norwich, in sundry legal meetings, did grant, lay out, and sequester, sundry tracts of land in the societies of the East and West Farms, for the support of the ministry in those two parishes.

That the defendant holds the demanded premises by force of a lease from the first ecclesiastical society in Norwich, for term of years, not yet expired, and bearing date before the plaintiffs' writ.

There was a demurrer to the replication, and joinder in demurrer — and judgment for the defendant.

By the COURT. The inhabitants of each town in this state (not divided into societies) are by law a corporation for the purpose of supporting public worship, and the gospel ministry, as well as for civil purposes; and in their corporate capacity, have power to receive and hold estates, real and personal, for said uses, and to call and settle ministers, build meeting-houses, etc.

2. The name and description by which they receive estates, and transact business in their ecclesiastical and civil capacity, is the same (to-wit), the inhabitants of the town of, etc.

3. When part of the inhabitants of such town are constituted a new and distinct society, the remaining inhabitants are by law considered, for ecclesiastical purposes, as the same corporation, having continuance and succession, by the name of the first society, which before existed by the name of the inhabitants of the town, and as holding the meeting-house, and all other estates that the inhabitants of such town re-

ceived, acquired and held, for any of the uses for which societies are constituted, and as bound to perform all the contracts and agreements made by the inhabitants of such town, with the minister, for his support, or respecting any other matter proper to a society.    This opinion is supported by former adjudications, and universal custom.

4. In the present case, it appears from the records of the votes and proceedings of the town of Norwich, recited in the pleadings, that the land in question was purchased when there was but one ecclesiastical society in the town, with express intention to be applied in supporting the gospel ministry.    That the purchase money was collected in the same tax with the minister's salary:    And although the deed from Gifford does not mention the use for which said land was purchased, and contains simply a sale and transfer, for a valuable consideration, as it was out of his power, as grantor, to direct the use; yet it appears, that the grantees acting in the same capacity as when calling and settling a minister, applied the use of said land toward the support of several successive ministers of the gospel, in that part of the town of Norwich which is now called the first society, for a term of more than eighty years:    That it was early called the parsonage land, and has never been applied to any other use: And therefore ought to be considered as purchased and held by the same corporation that is now called the first society in the town of Norwich.

5. As it clearly appears, that it was the intention of the inhabitants of the town of Norwich (in whatever capacity they acted) to appropriate said land for the use and support of the ministry in that part of the town now called the first society; and the same having been so appropriated and applied in manner aforesaid, it ought to be considered as an

appropriation or sequestration to that use, according to the ancient usage and practice, and so is confirmed by the statute in such case provided, (see stat. book, 159). So judgment was for the defendant, as he held by lease from the first society in said Norwich; and said first society were adjudged to hold the lands in exclusion of the town at large.

The chief justice said, he was doubtful whether all the reasons assigned by the court were conclusive; but on the third there could be no doubt, it being a point fully settled by former adjudications.

Note.— Judge Dyer did not sit in this case, being uncle to one of the plaintiffs; and Judge Ellsworth excused himself, having at a former trial been of counsel for the defendant.